Filed in Open Court
08/14/2025
Skyler B. O'Hara
By M. Ganott
Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

                **Plaintiff,**

    **v.**                                Case No. 22-20032-DDC-05

SPENCER ALLEN,

                **Defendant.**

## PLEA AGREEMENT

The United States of America, by and through Assistant United States Attorney Michelle McFarlane, and Spencer Allen, the defendant, personally and by and through his counsel, Robert Calbi, hereby enter into the following Plea Agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1.     **Defendant's Guilty Plea.** The defendant agrees to plead guilty to Count 1 of the Third Superseding Indictment charging a violation of 21 U.S.C. §841(a)(1)& (b)(1)(A)(viii) and §846, that is, Conspiracy to Distribute and Possess with Intent to Distribute More than Fifty Grams of Methamphetamine. By entering into this plea agreement, the defendant admits to knowingly committing the offense, and to being guilty of the offense. The defendant understands that the maximum sentence which may be imposed as to Count 1 of the Third Superseding Indictment to which he has agreed to plead guilty is not less than ten years and not more than life imprisonment, a $10,000 fine, not less than five years of supervised release, and a $100.00 mandatory special assessment.

2.     **Factual Basis for the Guilty Plea.** The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

Beginning in February 2022, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and others started an investigation into criminal activity and methamphetamine trafficking in the Kansas City, Kansas area.

An ATF undercover officer (UC) purchased methamphetamine from Hicks on four occasions: April 21, 2022, April 28, 2022, May 10, 2022 and May 25, 2022. On April 21, 2022, the UC purchased two ounces (approximately 56 grams) of 100% pure methamphetamine from Hicks at a location in Kansas City, Kansas.  On April 28, 2022, the UC purchased two ounces (approximately 57 grams) of 100% pure methamphetamine from Hicks at a location in Kansas City, Kansas.  On May 10, 2022, the UC purchased ¼ pound (approximately 90.4 grams) of 100% pure methamphetamine from Hicks at a location in Kansas City, Kansas.  On May 25, 2022, the UC purchased approximately 180 grams of 100% pure methamphetamine from Hicks at a location in Kansas City, Kansas. All methamphetamine purchased from Hicks has been lab tested and confirmed to be methamphetamine.

ATF observed Hicks frequently visited a house at 875 Ruby Ave in Kansas City, Kansas, including in close proximity to the buy on May 25.  The investigation revealed Ernest Lucas lived at 875 Ruby and was likely Hicks's source of supply for methamphetamine.  ATF put up an elevated security camera that allowed investigators to observe the street outside of 875 Ruby Ave on May, 11, 2022.  ATF observed individuals engaged in drug trafficking outside the house on a daily basis.

ATF observed two cars, a Ford F-550 and a Gold Chevy Equinox arriving and parking outside of 875 Ruby on a consistent basis.  A Kansas City Kansas Police Department (KCKPD) Officer stopped the Equinox on May 12 leaving 875 Ruby.  Abraham Gallegos was identified as the driver of the Equinox, and had approximately $6,500 in the car.  Utilizing various surveillance methods, ATF determined the F-550 and the Equinox were supplying Ernest Lucas with methamphetamine at 875 Ruby Ave.  The individuals driving these cars were seen going directly from 875 Ruby to 3321 Mersington Ave, Kansas City, Missouri.  The investigation revealed this house was a likely methamphetamine stash house.

On July 6, 2022, ATF executed a search warrant at 875 Ruby Ave.  Investigators located twelve firearms, ammunition, over $11,000 in cash, and approximately 274 grams of methamphetamine in various places in the house.  Investigators also seized Lucas's cell phone. Also on July 6, 2022, investigators searched 3321 Mersington Ave and found approximately 102 pounds of methamphetamine, eight firearms, electronic scales and other drug paraphernalia in the house.  It did not appear anyone was living in the house.

Investigators downloaded and extracted Lucas's cell phone.  They noted some numbers using a 785, or Topeka, area code.  ATF also reviewed pole camera footage and noted several instances where vehicles carrying Topeka license plates were captured outside of 875 Ruby Ave.  In searching Lucas's phone, investigators identified a Topeka area phone number having drug related conversations with Lucas.  ATF began matching the timing of the conversations with the pole camera footage from 875 Ruby.  On June 19, 2022, a 785 phone number ending in 7834 messaged Lucas that he "just hit the block" and then agents observed on the recorded pole camera footage a White BMW with Topeka plates arrive at 875 Ruby three minutes later.  The BMW was driven by a white man.  That white man met with another white man who arrived at 875 Ruby in a Nissan just minutes before.  The two men met with Lucas outside of 875 Ruby in an apparent drug deal.  On July 1, 2022, the user of the phone sent a selfie of him holding a stack of cash.  He was identified as Spencer Allen.

Investigators determined that Allen is friends with a known drug dealer named Jason "Country" Smith.  Smith's known phone number was saved as a contact in Lucas's phone.  There

was another number saved in Lucas's phone as "Usa", also believed to belong to Smith. ATF began matching the timing of conversations from both phone numbers with the pole camera footage from 875 Ruby. Smith was observed on the pole camera footage outside of Ruby on several occasions using different vehicles. Investigators determined Lucas was selling methamphetamine to both Smith and Allen at and outside of 875 Ruby Ave.

On November 2, 2022, Spencer Allen was arrested as part of an unrelated Topeka, Kansas investigation. Allen agreed to an interview with law enforcement. He confirmed he was with Smith when Smith purchased distribution quantities of methamphetamine from Lucas on several occasions at his home in Kansas City, Kansas. Allen said he was given smaller quantities from these purchases for personal use and sales.

Spencer Allen knowingly and intentionally conspired with others, including Jason Smith and Ernest Lucas to distribute and possess with intent to distribute more than fifty grams of methamphetamine.

3.    **Proposed Rule 11(c)(1)(C) Sentence.**  The parties propose, as an appropriate disposition of the case:

(a)    not less than 12 years and not more than 20 years in prison on Count 1, 21 U.S.C. § 846;

(b)    5 years of supervised release;

(c)    no fine; and

(d)    the mandatory special assessment of $100.00.

The parties seek this binding plea agreement as an appropriate disposition of the case, because if the Court permits itself to be bound by the proposed sentence, it brings certainty to the sentencing process; it assures that the defendant and the government will benefit from the bargain they have struck; it serves the interests of justice; and it assures a sentence consistent with the sentencing factors of 18 U.S.C. § 3553(a). If the Court does not agree with the sentence, the defendant and United States may be restored to the positions they maintained prior to reaching this plea Agreement. This plea agreement centers on the defendant's agreement to enter his guilty plea as soon as the Court's schedule permits, thereby preserving valuable Court, prosecution, defense, United States Probation Office, United States Marshals' Service and other law enforcement resources.

4.      **Application of the Sentencing Guidelines.**  The parties are of the belief that the proposed sentence does not offend the advisory sentencing guidelines.  Because this proposed sentence is sought pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties are not requesting imposition of an advisory guideline sentence.

5.      **Government's Agreements.**  In return for the defendant's plea of guilty as set forth herein, the United States agrees to dismiss the remaining counts of the Third Superseding Indictment at the time of sentencing, and agrees to not file any additional charges against the defendant arising out of the facts forming the basis for the present Indictments.

6.      **Consequences for Violating the Plea Agreement.**  The United States' obligations under this plea agreement are contingent upon the defendant's continuing to manifest an acceptance of responsibility.  If the defendant denies or gives conflicting statements as to his involvement, falsely denies or frivolously contests relevant conduct the Court determines to be true, willfully obstructs or impedes the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempts to do so), or has engaged in additional criminal conduct, the United States reserves the right to petition the Court for a hearing to determine if he has breached this plea agreement.

If the Court finds by a preponderance of the evidence that the defendant (1) has breached or violated this plea agreement; (2) has willfully obstructed or impeded the administration of justice, as defined by U.S.S.G. § 3C1.1 (or willfully attempted to do so); (3) has engaged in additional criminal conduct; or (4) has otherwise failed to adhere to this plea agreement's terms, this plea agreement will be deemed null and void, and the United States may pursue any additional charges arising from the criminal activity under investigation, as well as any charges for any perjury, false statement, or obstruction of justice that may have occurred.

If the Court finds the defendant has violated this plea agreement, he understands and agrees that all statements he made, any testimony he gave before a grand jury or any tribunal, or any leads from such statements or testimony, shall be admissible against him in any and all criminal proceedings. The defendant waives any rights which might be asserted under the United States Constitution, any statute, Federal Rule of Criminal Procedure 11(f), Federal Rule of Evidence 410, or any other federal rule that pertains to the admissibility of any statements he made subsequent to this plea agreement.

7.    **Whether to Accept the Proposed Plea Agreement and Sentence is Up to the Court.** The Court has no obligation to accept the proposed plea agreement and sentence. It is solely within the Court's discretion whether to accept the proposed binding plea agreement as an appropriate disposition of the case.

8.    **Withdrawal of Plea Permitted Only if the Court Does Not Accept the Plea Agreement and Proposed Sentence.** If the Court agrees to be bound by the proposed plea agreement and sentence, the parties shall be bound by all the terms of the proposed plea agreement and the defendant will not be permitted to withdraw his guilty plea. If the Court announces that it will NOT be bound by the proposed plea agreement, the parties agree that at that time either party may withdraw the proposed plea agreement, and if either does so, then all parties will be restored to the positions they were in prior to the entry of the defendant's plea. If neither party elects to withdraw the proposed plea agreement at the time the Court announces that it will not be bound, and before the Court proceeds with sentencing, then the parties shall be bound by all the terms of the proposed plea agreement and the defendant will not be permitted to withdraw his guilty plea.

9.    **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100.00 per count of conviction will be entered against him at the time of

sentencing. The defendant agrees to deliver to the Clerk of the United States District Court payment in the appropriate amount no later than the day of sentencing. The defendant has the burden of establishing an inability to pay the required special assessment. The parties acknowledge that if the Court finds the defendant is without resources to pay the special assessment at the time of sentencing, the Court may allow payment during his period of incarceration.

10. **Waiver of Appeal and Collateral Attack.** The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, his conviction, or the components of the sentence to be imposed herein, as well as the length and conditions of supervised release. The defendant is aware that 18 U.S.C. § 3742 affords him the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed in accordance with the sentence recommended by the parties under Rule 11(c)(1)(C). The defendant also waives any right to challenge his sentence, or the manner in which it was determined, or otherwise attempt to modify or change his sentence, in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255 (except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)), or a motion brought under Federal Rule of Civil Procedure 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case, except to the extent, if any, the Court imposes a sentence in excess of the sentence recommended by the parties under Rule 11(c)(1)(C). However, if the United States exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received, as authorized by 18 U.S.C. § 3742(a). Notwithstanding the foregoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

11.    **FOIA and Privacy Act Waiver.**  The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552. The defendant further waives any rights conferred under the Privacy Act of 1974, 5 U.S.C. § 552a, to prevent or object to the disclosure of records or materials pertaining to this case.

12.    **Full Disclosure by United States.**  The defendant understands the United States will provide to the Court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case.  This may include information concerning his background, character, and conduct, including the entirety of his criminal activities.  The defendant understands these disclosures are not limited to the count to which he is pleading guilty.  The United States may respond to comments he or his attorney makes, or to positions he or his attorney takes, and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement.  The defendant also has the right to provide information concerning the offense and to make recommendations to the Court and the United States Probation Office.

13.    **Parties to the Agreement.**  The defendant understands this plea agreement binds only him and the United States Attorney for the District of Kansas, and that it does not bind any other federal, state, or local prosecution authority.

14.    **Voluntariness of Guilty Plea.**  The defendant has had sufficient time to discuss this case, the evidence, and this Plea Agreement with his attorney and he is fully satisfied with the advice and representation his attorney provided.  Further, the defendant acknowledges that he has read the Plea Agreement, understands it, and agrees it is true and accurate and not the result of any

7

threats, duress or coercion. The defendant further understands that this Plea Agreement supersedes any and all other agreements or negotiations between the parties, and unless subsequently supplemented in writing with the joint approval of the parties, this Plea Agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that he is entering into this Plea Agreement and is pleading guilty because he is guilty. He further acknowledges that he is entering his guilty plea freely, voluntarily, and knowingly.

Date: 8/14/25

MICHELLE MCFARLANE
Assistant United States Attorney
Office of United States Attorney - Kansas City
500 State Avenue, Suite 360
Kansas City, KS 66101
913-551-6730
Fax: 913-551-6541
Michelle.McFarlane@usdoj.gov

Date: 8/14/25

D. CHRISTOPHER OAKLEY
Supervisory Assistant U.S. Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
913-551-6730
913-551-6541 (fax)
Chris.Oakley@usdoj.gov
Kan. S. Ct. No. 19248

Date: 8/14/25

AARON L. SMITH
Criminal Chief

Date: 8/14/23

SPENCER ALLEN
Defendant

Date: 8/14/25

ROBERT NICHOLAS CALBI

8

Law Offices of Robert N. Calbi
1100 Main Street, Suite 1648
Kansas City, MO 64105
816-221-2400
Fax: 816-368-9280
Email: R.Calbi@gmail.com
Counsel for defendant